# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| City of Charleston,<br><br>   Plaintiff,<br> v.<br><br>Brabham Oil Company, Inc.; Colonial Group, Inc.; Enmark Stations, Inc.; Colonial Pipeline Company; Piedmont Petroleum Corp.; Exxon Mobil Corporation; Exxonmobil Oil Corporation; Royal Dutch Shell PLC; Shell Oil Company; Shell Oil Products Company LLC; Chevron Corporation; Chevron U.S.A. Inc.; BP P.L.C.; BP America Inc.; Marathon Petroleum Corporation; Marathon Petroleum Company LP; Speedway LLC; Murphy Oil Corporation; Murphy Oil USA, Inc.; Hess Corporation; ConocoPhillips; ConocoPhillips Company, Phillips 66; and Phillips 66 Company,<br><br>   Defendants. | Case No. 2:20-cv-03579-RMG<br><br>**ORDER AND OPINION** |

This matter is before the Court on Plaintiff's Motion to Remand. (Dkt. No. 139). Defendants have responded in opposition to Plaintiff's motion (Dkt. No. 141), and Plaintiff has replied (Dkt. No. 142). The parties have also submitted supplemental briefing. (Dkt. Nos. 143-1, 149, 150, 151, 152, and 153). For the reasons set forth below, the Court grants Plaintiff's Motion to Remand and remands this case to the Court of Common Pleas for Charleston County, South Carolina.

1

I. **Background**

This case brought by the City of Charleston is one of over twenty cases across the country brought by different state and local governments asserting climate-change related claims against fossil fuel companies. Most of the cases were initiated in state courts and removed to the federal courts. Judicial discourse in those cases has centered not around whether the companies can be held liable, but rather, whether federal or state courts should decide. This is the question presently before this Court.

The City of Baltimore, Maryland was one of the first plaintiffs to bring these claims against fossil fuel companies in this Circuit. After a journey to the Supreme Court on an appellate jurisdiction issue and a second Fourth Circuit opinion affirming the district court's remand order, the Baltimore case has been remanded to Maryland state court. *Mayor and City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 238 (4th Cir 2022), *cert. denied*, ___ S.Ct. ___, 2023 WL 2046224 (April 24, 2023). A review of the Baltimore case is instructive.

A. *Mayor and City Council of Baltimore v. BP P.L.C.*

In 2018, the Mayor and City of Baltimore filed a complaint in the Circuit Court for Baltimore city against "major corporate members of the fossil fuel industry" alleging eight causes of action, public nuisance, private nuisance, strict liability failure to warn, strict liability for design defect, negligent design defect, negligent failure to warn, trespass, and violations of the Maryland Consumer Protection Act. *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538, 548 (D. Md. Aug. 16, 2018) ("*Baltimore I*"). The corporate defendants immediately removed the case to federal court, presenting eight grounds for federal removal: (1) federal common law, (2) federal question jurisdiction under *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005), (3) Clean Air Act preemption, (4) Outer

Continental Shelf Lands Act, (5) federal officer removal statute, (6) "federal enclaves," (7) bankruptcy law, and (8) original admiralty jurisdiction. The district court rejected the defendants' proposed grounds for federal jurisdiction and granted Baltimore's motion to remand to state court. *Id.* at 574.

The defendants appealed the district court's remand order to the Fourth Circuit. The Fourth Circuit found that it only had statutory authority to review one of the eight jurisdictional arguments, the federal officer argument under 28 U.S.C. § 1442, because Congress generally prohibits appellate review of a remand order. *Mayor & City Council of Baltimore v. BP P.L.C.*, 952 F.3d 452, 459 (4th Cir. 2020) ("*Baltimore II*"). The Fourth Circuit rejected Defendants' federal officer removal argument and affirmed the district court's decision to remand the case to state court. *Id.* at 471.

Defendants sought certiorari on whether the appellate court had jurisdiction to consider all eight of Defendants' arguments for federal jurisdiction. *BP P.L.C. v. Mayor & City Council of Baltimore*, ___ U.S. ___, 141 S. Ct. 1532 (2021) ("*Baltimore III*"). The Supreme Court granted certiorari and held that the Fourth Circuit is not divested of appellate jurisdiction over the defendants' other theories of removal and that the court may consider all bases for removal included within the district court's remand order. *Id.* at 1543. The Supreme Court did not address the Fourth Circuit's rejection of the defendants' federal officer removal argument and remanded the case to the Fourth Circuit to evaluate the remaining theories of removal the defendants proffered. *Id.*

On remand, the Fourth Circuit rejected the defendants' remaining seven arguments, concluding once again that there was no federal jurisdiction and that Baltimore's case belonged in state court. *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 238 (4th Cir. 2022)

3

("*Baltimore IV*"). The Supreme Court denied the defendants' petition for writ of certiorari as to *Baltimore IV*. *BP P.L.C. v. Mayor & City Council of Baltimore*, ___ S.Ct. ___, 2023 WL 3046224, at *1 (April 24, 2023).

### B. The Instant Case

The City of Charleston filed suit in the Court of Common Pleas for Charleston County against more than twenty multinational oil and gas companies. (Dkt. No. 1-2 at 1). The City alleges that Defendants have substantially contributed to greenhouse gas pollution, global warming, and climate change by extracting, producing, promoting, refining, distributing, and selling fossil fuel products, while simultaneously deceiving consumers and the public about dangers associated with those products. (*Id.*, ¶¶ 1-12). As a result of such conduct, the City claims that it has suffered and will continue to suffer severe injuries related to "climate crisis-caused environmental changes." (*Id.*, ¶ 11). According to the City, Defendants' conduct has adversely changed the environment in and around Charleston by causing a rise in sea level and an increase in storms, floods, heatwaves, drought, hurricanes, and other extreme weather events. (*Id.*, ¶ 10).

The Complaint asserts six causes of action, all based on South Carolina law: Public Nuisance (Count 1); Private Nuisance (Count 2); Strict Liability Failure to Warn (Count 3); Negligent Failure to Warn (Count 4); Trespass (Count 5); and violations of South Carolina Unfair Trade Practices (Count 6). (*Id.*, ¶¶ 153-218). The City seeks monetary damages, civil penalties, and equitable relief. (*Id.* at 141).

Defendants Chevron Corp. and Chevron U.S.A. Inc. timely filed a notice of removal in this Court, which asserted eight grounds for removal. (Dkt. No. 1). Defendants argued that the case is removable under the following eight theories: (1) the case is removable based on federal question jurisdiction because the City's claims are governed by federal common law, not state common

law; (2) the case is removable under the Outer Continental Shelf Lands Act; (3) the case is removable under the Federal Officer Removal statue, 28 U.S.C. § 1442; (4) the case is removable under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) because the case necessarily raises disputed and substantial federal issues; (5) the case is removable because the City's claims are completely preempted by the Clean Air Act; (6) the case is removable because it arises out of federal enclaves; (7) the case is removable under the class action fairness act; and (8) the case is removable because the only South Carolina defendants are fraudulently joined. (Dkt. No. 1 at 3).

Despite largely re-arguing contentions from *Baltimore*, three aspects of Defendants' Notice of Removal present new evidence and arguments in support of removal to federal court. Specifically, Defendants "present a materially expanded evidentiary record" in support of federal officer jurisdiction, a new argument for *Grable* jurisdiction, and an argument based on the doctrine of fraudulent joinder. (Dkt. No. 141 at 1).

This opinion only addresses these three new arguments because the Fourth Circuit's opinion in *Baltimore IV* governs and forecloses all other arguments presented by Defendants.[1] Because Defendants' new arguments similarly fail to provide grounds for federal jurisdiction, this Court grants the Plaintiff's motion to remand.

## II.     Standard

District courts of the United States are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (internal citation omitted). District

---

[1] The Court notes that Defendants also abandon all but the three new arguments in their response in opposition to Plaintiff's motion. (Dkt. No. 141).

5

courts "may not exercise jurisdiction absent a statutory basis," *id.*, and in turn, Congress may not confer jurisdiction absent a constitutional basis. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) ("The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution."). Thus, "removal jurisdiction raises significant federalism concerns." *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)). For this reason, courts "must strictly construe" removal statutes and resolve all doubts in favor of remanding the case to state court. *Mulcahey*, 29 F.3d at 151. The "burden of establishing federal jurisdiction is placed upon the party seeking removal." *Id.*

### III. Discussion

#### A. Federal Officer Removal

Defendants argue that this case is removable under the federal officer removal statute, 28 U.S.C. § 1442. Defendants provide five theories in support of their federal officer removal argument and assert that the Fourth Circuit's opinion in *Baltimore IV* does not completely foreclose their arguments because the *Baltimore IV* Court did not consider all of the theories Defendants here present and, to the extent the *Baltimore IV* Court did consider one of Defendants' theories, the record here contains additional details the Fourth Circuit found were lacking. (Dkt. No. 141 at 10).

The federal officer removal statute allows defendants to remove a "civil action . . . that is against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) . . . in an official or individual capacity, for or relating to any act under

6

color of such office." 28 U.S.C. § 1442(a)(1). The basic purpose of the statute is "to protect the Federal Government from the interference with it's 'operations' that would ensue were a State able, for example, to 'arrest' and bring 'to trial in a State court for an alleged offense against the law of the State,' 'officers and agents' of the Federal Government 'acting . . . within the scope of their authority.'" *Watson v. Philip Morris Co.*, 551 U.S. 142, 150 (2007) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)).

Under the federal officer removal statute, "a private defendant must show: (1) that it acted under a federal officer, (2) that it has a colorable federal defense, and (3) that the charged conduct as carried out for or in relation to the asserted official authority." *Baltimore IV*, 31 F.4th at 228 (quoting *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017)).

In applying that three-part test, the District Court in *Baltimore I* concluded that "[e]ven assuming that that the first two requirements for removal under § 1442 are satisfied, defendants have failed plausibly to assert that the third requirement for removal under this statute is met – *i.e.*, that the charged conduct was carried out 'for or relating to' the alleged official authority." *Baltimore I*, 388 F.Supp.3d at 568. The Court further noted that the defendants were sued for "their contribution to climate change by producing, promoting, selling, and concealing the dangers of fossil fuel products" and that there is no "indication that the federal government directed them to conceal the hazards of fossil fuels or prohibited them from providing warnings to consumers." *Id.* The court therefore denied federal officer removal jurisdiction because the defendant's purported federal authority was not related to the charged conduct, and the Fourth Circuit agreed.

In *Baltimore IV*, The Fourth Circuit reasoned that "when read as a whole, the Complaint clearly seeks to challenge the promotion and sale of fossil-fuel products without warning and abetted by a sophisticated disinformation campaign . . . ." *Baltimore IV*, 31 F.4th 232-34.

7

According to the Fourth Circuit, references to fossil fuel production in the Complaint "only serve to tell a broader story about how the unrestrained production and use of Defendants' fossil-fuel products contribute to greenhouse gas pollution. *Id.* "Although this story is necessary to establish the avenue of Baltimore's climate-change-related injuries, it is not the source of tort liability." *Id.*

Defendants' new theories and additional details on older theories do not change the analysis. This expanded record pertains exclusively to the first element of the federal officer inquiry, that Defendants "acted under a federal officer." (*Compare* Dkt. No. 141 at 9-23 (acting under element), *with* Dkt. No. 141 at 24-28 (relation element)). The expanded record, therefore, does not address the legal deficiency identified by the *Baltimore I* and *Baltimore IV* decisions because none of the new examples of federal authority relate to the alleged tortious misconduct.

Moreover, the District of Maryland and the District of New Jersey recently found there was no federal officer removal based on a similar record. *See City of Annapolis v. BP P.L.C.*, 2022 WL 4548226, at *5-8 (D. Md. Sept. 29, 2022); *City of Hoboken v. Exxon Mobil Corp.*, 558 F.Supp.3d 191, 206-09 (D.N.J.) (*Hoboken I*) aff'd sub nom. *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022) (*Hoboken II*); *see also* (Dkt. No. 141 at 27 n.8 (Defendants Opposition) ("The District of Maryland recently found there was no federal officer removal based on a similar evidentiary record." (citing *Annapolis*, 2022 WL 458226, at *1))). Those courts reasoned that the newly provided information was insufficient to confer federal officer jurisdiction because the new information was related to Defendants' production of oil and gas and not to Defendants' alleged misinformation campaign. The Court sees no reasons to depart from the *Annapolis* and *Hoboken* decisions here.

Because the City's Complaint is focused on Defendants' alleged misinformation campaign that was used to boost Defendants' sales to consumers and because Defendants do not claim that

8

any federal officer directed them to engage in the alleged misinformation campaign, the third element of the *Sawyer* test is not met, and Defendants, therefore, cannot remove this matter pursuant to the federal officer removal statute.

### B. *Grable* Jurisdiction

Under 28 U.S.C. § 1441, the general removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be "removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Id.* § 1441(a). In other words, "[i]t is the general rule that an action may be removed from state court to federal court only if a federal district court would have original jurisdiction over the claim in suit." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 430, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999). Litigants may invoke this original jurisdiction through actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Generally, civil litigants bring cases that satisfy § 1331 federal-question jurisdiction by pleading a cause of action created by federal law. *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). "There is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, [the Supreme Court] having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id.* This "*Grable* jurisdiction" exists in only a "slim category" of cases. *Gunn v. Minton*, 568 U.S. 251, 258, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013). Such cases present state law claims that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without

9

disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314, 125 S.Ct. 2363.

Defendants argue that the City's claim arise under federal law for purposes of *Grable* jurisdiction because they necessarily incorporate affirmative federal constitutional elements imposed by the First Amendment. (Dkt. No. 141 at 30-31). Defendants argue that federal jurisdiction is proper under *Grable* because the Court will be required to construe the First Amendment when considering Plaintiffs claims. (*Id.*)

The District of Maryland and District of New Jersey have rejected Defendants same *Grable* arguments. *Hoboken I*, 558 F.Supp.3d at 205; *Annapolis*, 2022 WLL 4548226, at * 9; *see also Hoboken II*, 45 F.4th at 709 ("Though the First Amendment limits state laws that touch speech, those limits do not extend federal jurisdiction to every such claim. State courts routinely hear libel, slander, and misrepresentation cases involving matters of public concern. The claims here arise under state law, and their elements do not require resolving substantial disputed federal questions."). This Court finds these decisions persuasive. Seeing no clear reason to deviate from the clear weight of authority, this Court also concludes that *Grable* jurisdiction does not exist. As a result, Defendants fail to establish that there is federal question jurisdiction in this matter authorized by 28 U.S.C. § 1331.

### C. Fraudulent Joinder

Defendants argue that diversity jurisdiction exists because Defendants Brabham Oil Company, Inc. and Piedmont Petroleum Corp., two South Carolina corporations, were fraudulently joined. (Dkt. No. 141 at 31-33).

To establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: (1) that there is no possibility that the plaintiff would be able to establish a

cause of action against the in-state defendant in state court; or (2) that there has been outright fraud in the plaintiff's pleading of jurisdictional facts. *E.g., Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir.1993). This is a heavy burden. *Id.* The defendant must show the plaintiff cannot establish a claim against the nondiverse defendant "even after resolving all issues of fact and law in the plaintiff's favor." *Id.* at 232–233. In determining whether a joinder is fraudulent, the court "is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Mayes v. Rapoport,* 198 F.3d 457, 462 (4th Cir. 1999).

Defendants argue that the City failed to allege any facts relating to Piedmont or Brabham that could possibly establish their liability to the City on the City's disinformation theory. (Dkt. Nos. 139 at 33; 112 at 2). Piedmont and Brabham submitted declarations stating that they have not played any role in any marketing campaign relating to greenhouse gases, global warming, or the science of climate change. (Dkt. Nos. 112-1; 112-2). Defendants argue that because the City cannot dispute the veracity of these declarations the Court should find that Plaintiff has no possibility of establishing Piedmont's or Brabham's liability and therefore should find that they were fraudulently joined. (Dkt. No. 141 at 33). The City argues that Defendants' assertions are a challenge to the City's claims on the merits and cannot be resolved in a jurisdictional motion. (Dkt. No. 142 at 15).

Resolving all issues of fact and law in the City's favor, Defendants have not shown that there is no possibility the City would be able to establish its claims against Piedmont or Brabham. The Complaint alleges that Piedmont and Brabham participated in the disinformation campaign that caused the City's injuries. (Dkt. No. 1-2, ¶¶ 20, 22). For example, the Complaint connects Piedmont to the Global Climate Coalition, which is an organization alleged to participate in the

11

deceptive campaigns. (*Id.*, ¶¶ 22(e), 33(j)). Piedmont's affidavit refutes that allegation. (Dkt. No. 112-1, ¶ 8). Because the Court may not act as a fact finder in deciding jurisdictional questions, *see Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999), contested facts should generally not provide the basis for finding of fraudulent joinder, *cf. Stoney Marine International Ltd. v. Arthur J. Gallagher & Co.*, No. 2:16-cv-1154-DCN, 2016 WL 7334862, at *3 (D.S.C. Dec. 19, 2016 (noting, in the fraudulent joinder context, "that courts have long held that the question of proximate cause is ordinarily one of fact for the jury"). Accordingly, in light of the allegations possibly tying Brabham and Piedmont to the disinformation campaign that the City alleges causes its harm, the Court finds that Defendants have not met their heavy burden to show fraudulent joinder.[2]

### D. Attorney's Fees

In addition to its motion to remand, the City seeks attorney's fees incurred in connections with the improper removal of this action. (Dkt. No. 139 at 33-34). The City argues that Defendants notice of removal was meritless because none of Defendants' arguments have support in existing law. (*Id.* at 34). The City argues that, in these climate-change related cases, the Fourth Circuit, in *Baltimore IV*, and four other circuit courts rejected every basis for jurisdiction before them, many of which the Defendants reraised here. (*Id.*)

---

[2] Defendants submitted a sur-reply arguing that the City has no possibility of recovery on its failure to warn claims against Piedmont and Brabham. (Dkt. No. 143-1). Defendants argue that the City has no possibility to recover on those claims because (1) the City is not a consumer of products sold by Piedmont and Brabham as required under South Carolina Law, (2) there is no generally duty to warn third parties of potential dangers, and (3) Piedmont and Brabham's fossil fuel products cannot be consider unreasonably dangerous under South Carolina law. The Court need not address these arguments because it found that the City could possibly succeed on its nuisance claims against Piedmont and Brabham based on their alleged connection to the misinformation campaign.

An order remanding the case may require payment of just costs and any actual expenses including attorney's fees, incurred as a result of removal." 28 U.S.C. § 1447(c). The Fourth Circuit has held that 28 U.S.C. § 1447(c) "provides the district court with discretion to award fees when remanding a case" where it finds such awards appropriate. *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996). A court does not "abuse its discretion in denying party's motion for attorney fees incurred as result of removal of action which was remanded to state court where there was no evidence of bad faith on part of parties, and it was not obvious that federal jurisdiction in action was lacking." *Id.* The Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S.Ct. 704, 163 (2005).

The Court finds that many of the removal grounds were contested issues at the time of removal because this case was removed before the Fourth Circuit's *Baltimore IV* decision. Additionally, Defendants submitted grounds for removal not raised in *Baltimore*. The Court, therefore, declines to award the City the fees and costs it incurred because of the removal.

IV.   **Conclusion**

For the reasons stated above, the City's Motion to Remand (Dkt. No. 139) is **GRANTED**. This action is **REMANDED** to the Court of Common Pleas for Charleston County, South Carolina. The City's request for Attorney's Fees is **DENIED**.

                                              s/ Richard Mark Gergel  
                                              Richard Mark Gergel  
                                              United States District Judge

July 5, 2023  
Charleston, South Carolina