IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| COUNTY OF MULTNOMAH,<br><br>        Plaintiff,<br>    v.<br><br>EXXON MOBIL CORPORATION, SHELL PLC, SHELL USA, INC., EQUILON ENTERPRISES LLC, BP PLC, BP AMERICA, INC., BP PRODUCTS NORTH AMERICA INC., CHEVRON CORP., CHEVRON USA INC., CONOCOPHILLIPS, MOTIVA ENTERPRISES LLC, OCCIDENTAL PETROLEUM, SPACE AGE FUEL, INC., VALERO ENERGY CORPORATION, TOTALENERGIES SE, TOTAL ENERGIES MARKETING USA, INC., MARATHON OIL COMPANY, MARATHON OIL CORP., MARATHON PETROLEUM CORP., PEABODY ENERGY CORP., KOCH INDUSTRIES INC., AMERICAN PETROLEUM INSTITUTE, WESTERN STATES PETROLEUM ASSOCIATION, MCKINSEY AND COMPANY, INC., MCKINSEY HOLDINGS INC., and DOES 1-250,<br><br>        Defendants. | Case No.: 3:23-cv-01213-YY<br><br>OPINION & ORDER |

**Adrienne Nelson, District Judge**

United States Magistrate Judge Youlee Yim You issued her Findings and Recommendations ("F&R") in this case on April 10, 2024, recommending that this Court grant plaintiff's Motion to Remand to State Court. Defendants timely filed objections, to which plaintiff responded. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d).

A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l). When a magistrate judge issues a findings and recommendation related to a dispositive motion and a party files objections, "the court shall

1

make a de novo determination of those portions of the report." *Id.* However, if the magistrate judge's findings and recommendation is related to a non-dispositive matter and a party files objections, the district judge may reject the determinations *only* if the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). If no objections are filed, then no standard of review applies. However, further review by the district court *sua sponte* is not prohibited. *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The Advisory Committee notes to Federal Rule of Civil Procedure 72(b) recommend that unobjected to proposed findings and recommendations be reviewed for "clear error on the face of the record." Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.

## DISCUSSION

Plaintiff County of Multnomah originally filed this case in Multnomah County Circuit Court. Defendants Chevron Corp. and Chevron USA Inc. removed the case to this Court on August 18, 2023, asserting both federal question jurisdiction and diversity jurisdiction. On October 2, 2023, plaintiff filed a Motion to Remand to State Court, ECF [98]. The F&R found that this Court did not have federal question jurisdiction over the case and that defendants had not shown that defendant Space Age Fuel, Inc., the only non-diverse defendant, was fraudulently joined, destroying diversity jurisdiction cable. Thus, the F&R recommends granting plaintiff's motion and remanding this case to state court.

Defendants timely filed objections to the F&R on the following bases: (1) the F&R applies an erroneous standard for fraudulent joinder; (2) the F&R ignores key aspects and flaws of plaintiff's allegations; and (3) the F&R impermissibly disregards an uncontradicted sworn declaration submitted in support of removal. These objections are addressed in turn.

### A.   Standard for Fraudulent Joinder

Defendants appear to argue that the F&R erred by rejecting arguments that "go to the underlying merits of plaintiff's claims or defendants' defenses, not to whether Space Age was fraudulently joined." F&R, ECF [177], at 13. Defendants argue that, although fraudulent joinder analysis should not become a "searching inquiry into the merits," *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 549 (9th Cir. 2018), other Ninth Circuit precedent demonstrates that some examination of the merits

is permissible and appropriate. *See, e.g.*, *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061 (9th Cir. 2001); *Ritchey v. Upjohn Drug co.*, 139 F.3d 1313, 1320 (9th Cir. 1998).

The Court agrees that some level of inquiry into a plaintiff's claims may be appropriate in a fraudulent joinder analysis. For example, "'a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant.'" *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Ill. Central R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)); *see Grancare*, 889 F.3d at 549 ("[T]he party seeking removal is entitled to present additional facts that demonstrate that a defendant has been fraudulently joined[.]"). Thus, when a defendant asserts a defense that would "effectively decide[ ] the entire case," examination of the defense is inappropriate in a fraudulent joinder analysis. *Id.* at 1045 (quoting *Smallwood*, 385 F.3d at 571). In contrast, when a defense operates as a "procedural bar, and not one which relates to the merits of the case," a court may examine the defense in its fraudulent joinder analysis. *Id.* (quoting *Ritchey*, 139 F.3d at 1319).

However, the defenses proffered by defendants that the F&R declined to address are not "procedural bars," but rather arguments that require a depth of inquiry that is inappropriate in a fraudulent joinder analysis. For example, defendants' argument that "the allegations in the complaint about [Space Age's] failure to disclose are really directed at information about fossil fuels that was already known by the general public" necessarily requires an examination of what information was known by the general public, and what information Space Age should have known given its industry. This type of argument goes to the heart of plaintiff's failure to disclose claim—assessing what defendants, including Space Age, knew about the effects of using fossil fuels, and when they obtained that information. Such an inquiry goes far beyond identifying "discrete and undisputed facts," and indeed would likely "effectively decide[ ] the entire case." *Id.* at 1044-45.

The same is true of defendants' proffered defenses. An analysis of either the *Noerr Pennington* doctrine or Oregon's litigation privilege would require a deeper examination of the merits of

3

plaintiff's claim because it would ask this Court to examine the specific contours of the claim. For example, addressing these defenses would require the Court to conduct a fact-intensive inquiry to assess the nature of Space Age's conduct in the prior lawsuit and whether plaintiff's allegations relate to statements made in connection with judicial proceedings. The nature of these inquiries goes far deeper than merely identifying relevant dates in connection with a statute of limitations defense, or looking to a contract to determine if a defendant was indeed a party to the contract. Such an inquiry runs afoul of the scope of fraudulent joinder review, and the F&R correctly declined to engage with these arguments.

**B.      Plaintiff's Allegations**

Defendants argue that the F&R erred by concluding that plaintiff's claims for public nuisance, negligence, and trespass do not require plaintiff to plead a misrepresentation. Defendants contend that, to the contrary, plaintiff's claims explicitly rely on a theory of misrepresentation and deception, as evidenced in the complaint and plaintiff's pleadings.

The problem with defendants' argument is that it ignores the broad nature of a fraudulent joinder inquiry. If there is "'a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants,'" then joinder was not fraudulent, and the case must be remanded to state court. *Grancare*, 889 F.3d at 548 (quoting *Hunter*, 582 F.3d at 1046). In this analysis, the question is whether the "individual[ ] joined in the action cannot be liable on *any* theory." *Id.* (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)) (emphasis added). While it is true that plaintiff *may* pursue its claims on a misrepresentation theory, such a theory is not necessary to state a cause of action for these claims. Thus, the Court is not constrained to analyzing plaintiff's claims solely on a misrepresentation theory when the question is whether plaintiff could state a claim against Space Age under *any* theory.

As discussed in the well-reasoned F&R, the complaint, on its face, alleges facts sufficient to establish a possibility that a state court would find that the complaint states a cause of action against Space Age. First, under Oregon law, a plaintiff must plead four elements to state a claim of public nuisance: (1) substantial interference with a legal interest; (2) unreasonable interference with that legal interest; (3)

4

culpable conduct; and (4) causation. *Emanuel Displaced Persons Ass'n 2 v. City of Portland*, No. 3:22-cv-01896-SI, 2023 WL 8292606, at *12 (D. Or. Dec. 1, 2023) (citing *Hay v. Stevens*, 271 Or. 16, 20-21, 530 P.2d 37 (1975); *Jacobson v. Crown Zellerbach Corp.*, 273 Or. 15, 19-20, 539 P.2d 641 (1975)). The complaint contains the following relevant allegations:

> "Space Age is responsible for substantial GHG emissions from 1982-2023 in both direct emissions from their storage, transportation and end use of their products.
> "During the years 2010 through 2021, Space Age Fuel contributed 7,601,219 metric tons of CO2 greenhouse gas emissions in Oregon. . . . Carbon emissions attributable to this Defendant are individually and collectively (with the other Defendants) a cause of enormous harm to Plaintiff for which this Defendant is individually and jointly and severally liable to Plaintiff.
> . . . .
> "Plaintiffs and its citizens have possessory interests in the lands of Multnomah County. Plaintiff and its citizens have a right to enjoy those lands and the air above same.
> "Defendants' intentional and negligent acts in production, promotion, refining, marketing, consulting, and sales of fossil fuel-based consumer products in Multnomah County and elsewhere have caused the losses, death, and destruction of County property, lands, and resources resulting from the extreme weather event known as the 2021 heat dome resulting wildfires, and their aftermath. Defendants created a public nuisance that is unreasonable, harmful, and disruptive to health safety, the County's fiscal health, and general welfare of Multnomah County.
> "Defendants knew or should have known that their deliberate, reckless, and deceitful promotion of fossil fuels that emit GHGs would lead to extreme heat events that cause a public nuisance that is harmful to health, obstructs free use of the County lands and property and will require enormous financial resources to abate.
> "Extreme weather events caused by Defendants GHG emissions activity are an unreasonable interference with a public right common to the public, including public health, the right to enjoyment of life and property, and excessive expenditure of taxpayer resources. Extreme heat in a moderate climate causes unreasonable interference with each of these rights common to the public.
> "The harm and future risks imposed upon Plaintiff and its inhabitants from climate shift and extreme heat events in the County that Defendants caused far outweigh any social utility that Defendants create through their fossil fuel business activities *when coupled* with the Defendants' deception of the damage that is wrought therefrom.
> . . . .
> "Each Defendant's conduct was a cause of the harm to Multnomah County."

Decl. of Joshua D. Dick, Ex. 1 ("First Am. Compl."), ¶¶ 165-66, 504-08, 510.

These allegations are sufficient to establish a possibility that plaintiff could state a claim for public nuisance against Space Age. Contrary to defendants' assertions, neither a public nuisance claim nor the allegations of the complaint support the proposition that plaintiffs may bring this claim solely on a misrepresentation theory. Indeed, public nuisance may be shown through negligent or reckless acts,

*Jacobson*, 273 Or. at 18, and the complaint alleges both that defendants "knew" of the climate change effects related to GHG emissions, and that they "should have known" of those effects. Plaintiff need not, and did not, allege solely that Space Age knew, or intended, that its emissions would lead to extreme heat events that cause a public nuisance; the allegation that Space Age "should have known" suffices.

Second, to state a claim for negligence, a plaintiff "must establish that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Sloan ex rel. Est. of Sloan v. Providence Health Sys.-Or.*, 364 Or. 635, 643, 437 P.3d 1097 (2019). Defendants argue that plaintiff's negligence claim "hinges on Plaintiff's allegations that Defendants knew about alleged risks to global warming posed by fossil fuels but then 'concealed' that knowledge." Defs.' Objs. to F&R ("Defs.' Objs."), ECF [179], at 18. However, the complaint actually alleges in its negligence claim that defendants "knew *or should have known* of effects the GHG emissions from the intended use of their products would have on the atmosphere, including the likelihood of extreme weather events like the 2021 PNW heat dome." First Am. Compl. ¶ 515 (emphasis added). It further alleges that defendants were negligent when they (1)"continued to extract, process and sell fossil fuel products which they knew or should have known would cause injury to Plaintiff and others," and (2) "failed to warn Plaintiff and others of the foreseeable consequences of using their fossil fuel products." *Id.* ¶ 516. These allegations are sufficient to establish the possibility that plaintiff could state a claim for negligence against Space Age.

Third, to state a claim for trespass, a plaintiff "must establish an intentional, physical intrusion by the defendant on the plaintiff's property, which plaintiff did not authorize or consent to, and which caused plaintiff damage." *Verizon Nw., Inc. v. Main St. Dev., Inc.*, 693 F. Supp. 2d 1265, 1278 (D. Or. 2010). The complaint alleges that "[d]efendants have engaged in intentional conduct that has caused and contributed to climate change, resulting in a radical shift in climate patterns that has caused waters, from extreme rain events and excessive snowpack melting, to enter Plaintiff's property." First. Am. Compl. ¶ 528. Further, it alleges that "[d]efendants knew that the use of their products would both cause climate change—extreme weather events, more intense fires causing smoke intrusion—and cause these invasions

6

of Plaintiff's property and that they lacked permission for these invasions but intruded anyway." *Id.* ¶ 530. These factual allegations are sufficient to establish a possibility that the complaint states a claim for trespass against Space Age.

Defendants also argue that the F&R erred by finding that, even if plaintiff's claims solely relied on a deception and misrepresentation theory, the complaint would still have a possibility of stating a claim against Space Age. The Court need not address this argument because, again, the question in a fraudulent joinder analysis is whether the claim could succeed on any theory. Further review of whether plaintiff has a possibility of stating a claim under defendants' narrowly drawn perspective of the complaint is unnecessary when the Court has already concluded that such a possibility exists in the broader context of the inquiry.

C.   **Pliska Declaration**

Finally, defendants argue that the F&R erred by "disregard[ing] the substance of Mr. Pliska's declaration." Defs.' Objs. 30. Defendants contend that the F&R erroneously interpreted Ninth Circuit caselaw as limiting the categories of extrinsic materials that may be considered outside of the complaint in a fraudulent joinder analysis. The Court disagrees.

Contrary to defendants' characterization, the F&R properly highlighted that a single declaration from a resident defendant is simply not sufficient to clear the high standard required to establish fraudulent joinder. *See Grancare*, 889 F.3d at 551 ("[A] denial, even a sworn denial, of allegations does not prove their falsity."). The mere fact that Judge You disagreed with defendants about the weight of the declaration does not mean it was wholly disregarded.

Nevertheless, defendants maintain that the declaration "establishes that [Space Age] has never been involved in any of the alleged misrepresentations." Defs.' Objs. 30. Defendants argue that, unlike other cases in which declarations from a resident defendant were insufficient to establish fraudulent joinder, Pliska's declaration is not a "blanket denial." *Id.* at 33 (quoting *Maas v. Zymbe,* LLC, 2020 WL 2793527, at *6 (N.D. Cal. May 29, 2020)). That is, defendants argue that the declaration does not deny any allegations because the complaint does not allege specific conduct attributable to Space Age.

7

Yet, the complaint contains specific allegations against Space Age, including the amount of its GHG emissions and an allegation that those emissions caused, and continue to cause, plaintiff harm. *See* First Am. Compl. ¶¶ 158-66. That the subsequent allegations are in the form of general allegations against all defendants does not diminish the fact that the general allegations apply with equal force to Space Age. *See Grancare*, 889 F.3d at 552 (holding that arguments regarding "lumping" allegations against defendants went to "sufficiency of the complaint, rather than to the possible viability" of claims). Thus, Pliska's assertions, such as "Space Age has never engaged in any lobbying," "Space Age has never released or made any public statement about the causes or science of climate change," and "Space Age has never obtained any information about greenhouse gases, climate change, or the science of climate change, beyond what information has been available to the general public," Decl. of James C. Pliska, ECF [142], ¶¶ 9-10, 12, are precisely what Judge You described: statements that "at bottom do nothing more than deny plaintiff's allegations." F&R 11.

Although defendants argue that *DaCosta v. Novartis AG*, 180 F. Supp. 2d 1178 (D. Or. 2001), dictates that an unrefuted declaration from a resident defendant can establish fraudulent joinder, that opinion is not binding on this Court, was decided seventeen years before *Grancare*, and cites only Fifth Circuit precedent for the proposition that fraudulent joinder can be found based solely on a resident defendant's declaration. Even in *McCabe v. General Foods Corp.*, where the Ninth Circuit referenced the resident defendants' declarations, the court first found that "[o]n that basis of the complaint alone," fraudulent joinder could be found because the complaint alleged only that those defendants acted in a managerial capacity. 811 F.2d 1336, 1339 (9th Cir. 1987).

Perhaps more importantly, plaintiff need not allege a misrepresentation to establish a possibility of a claim for relief, as stated numerous times in this opinion. The declaration contains denials regarding what Space Age knew or did not know, what groups it was allegedly a member of, etc.; however, what it does not contain is any rebuttal or refutation for a liability theory based on what Space Age *should* have known. Even if the declaration did contain such a statement, which it does not, it, at best, would raise issues of fact that cannot be assessed at this stage.

## CONCLUSION

Upon review, the Court ADOPTS the F&R, ECF [177], as its own opinion. Plaintiff's Motion to Remand to State Court, is GRANTED. This case is remanded to the Multnomah County Circuit Court.

IT IS SO ORDERED.

DATED this 10th day of June, 2024.

_____
Adrienne Nelson
United States District Judge